THE NEXT CASE IS RED DABAS V. UNITED STATES ATTORNEY GENERAL. WHEN HE IS READY, WE WILL HEAR FROM MR. WARD, THE ATTORNEY FOR THE DEPARTMENT OF JUSTICE AND THE ATTORNEY GENERAL FOR RESPONDENCE. MR. WARD. GOOD MORNING. MAY IT PLEASE THE COURT. BRYAN WARD, ON BEHALF OF THE GOVERNMENT. YOUR HONORS, WE ASK THIS COURT TO REVERSE THE DECISION OF THE DISTRICT COURT. THE QUESTION IN THIS CASE IS WHETHER THE PROVISIONS OF 8 U.S.D., SECTION 1231, APPLY TO THE PETITIONER IN THIS CASE. AND THE TEXT, THE HISTORY, AND THE STRUCTURE OF THAT PROVISION ALL COMPEL THE CONCLUSION THAT IT DOES, REGARDLESS, APPLIES TO ANY INDIVIDUAL WHO HAS A REINSTATED ORDER OF REMOVAL, REGARDLESS OF WHETHER THEY HAVE ONGOING WITHHOLDING-ONLY PROCEEDINGS. SECTION 1231 IS A SECTION THAT'S TITLED, DETENTION AND REMOVAL OF ALIENS WHO ARE ORDERED REMOVED. THAT'S WHAT SECTION 1231 GOVERNS. AND PETITIONER CAN'T REASONABLY DISPUTE THAT HE'S AN ALIEN THAT'S BEEN ORDERED REMOVED. HE WAS PREVIOUSLY PLACED IN REMOVAL PROCEEDINGS, RECEIVED A REMOVAL ORDER THAT NO ONE DISPUTES IS FINAL, WAS REMOVED FROM THE UNITED STATES BASED ON THAT REMOVAL ORDER, AND THE ONLY REASON HE IS HERE IN THE UNITED STATES, AGAIN, IS BECAUSE HE REENTERED UNLAWFULLY IN VIOLATION OF THAT ORDER. AND SO, WHEN THAT HAPPENS, CONGRESS ADDED A SPECIFIC PROVISION WITHIN 1231, AT 1231A5, THAT GOVERNS A SITUATION. AND THAT PROVISION AUTHORIZES DHS, WHEN AN INDIVIDUAL UNLAWFULLY REENTERS THE UNITED STATES, AFTER BEING REMOVED ON A FINAL ORDER, IT AUTHORIZES DHS TO REINSTATE THAT REMOVAL ORDER. AND WHEN IT DOES IT, THE TEXT OF THAT PROVISION SAYS, THE REMOVAL ORDER IS REINSTATED FROM ITS ORIGINAL DATE, AND IS NOT SUBJECT TO BEING REOPENED OR REVIEWED. THE ALIEN IS NOT ELIGIBLE AND MAY NOT APPLY FOR ANY RELIEF UNDER THIS CHAPTER. AND THE ALIEN SHALL BE REMOVED UNDER THE PRIOR ORDER AT ANY TIME AFTER REENTRY. AND SO, THERE'S NO WAY, UNDER THIS PROVISION, WHICH NO ONE DISPUTES WAS APPLIED TO MR. RAZABOFF, THAT HE IS AN ALIEN WITH A FINAL REMOVAL ORDER THAT FALLS UNDER SECTION 1231. NOW, PETITIONER IN THE DISTRICT COURT, INSTEAD, THE DISTRICT COURT FOUND, A PETITIONER ARGUES THAT HE INSTEAD FALLS UNDER A PROVISION AT AUSC 1226, 1226A, THAT'S THE PROVISION THAT GOVERNS ALIENS WHEN THEY'RE IN THE INITIAL SET OF REMOVAL PROCEEDINGS. AND IT SAYS THAT THAT PROVISION GOVERNS WHILE A DECISION ABOUT WHETHER THE ALIEN IS TO BE REMOVED FROM THE UNITED STATES IS PENDING. After a removal order is reinstated, after an alien reenters, there's no pending decision about whether the alien is removable from the United States. That decision that they are, they have no entitlement to remain in the United States, that they are removable, is contained in the final reinstated removal order that is reinstated. Council, hi, this is Robert Luck. You did something there that I think other courts have done and that I think is part of the issue here, and that is you replaced the words to be removed with removable. You might not even know that you did it, but you did do it. And I think that's part of the issue here, which is if Congress had used the word removable, which is something that everyone understands and is used in plenty of other places in the statute, then your position would be very clear. But some of the courts, including the magistrate judge here, got hung up on the to be removed and the difference in what that must mean or may mean than removable. If you could address that, of what difference that language has, if any, and how that is or is not significant here, that would be helpful to me. Yes, Your Honor, happy to address that. So there are separate provisions in the INA that govern an alien when they're going through removal proceedings the initial time versus when they come back and their order is reinstated. And so these provisions in Section 1226A govern the right to bond hearing and custody in those original removal proceedings. And it does talk about that decision about to be removed from the United States. But the provisions at, there are provisions in the U.S. Code at 8 U.S.C. Section 1229A, and this is at sub-A3. These are the provisions, that section is titled Removal Proceedings. This is the provisions that govern how removal proceedings before an immigration judge are handled, the provisions that apply there. And at 1229A, A sub-3, it says, unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or if the alien has been admitted, removed from the United States. And so that language in 1226A aligns with this removed from the United States language in 1229A that governs removal proceedings. So for an alien who has gone through removal proceedings, received a final removal order, when their order is reinstated and they return to the United States, the regulatory provisions provide that because that alien is not entitled to challenge their underlying removal order in any way. They're not entitled to revisit that. They're not entitled to these removal proceedings under 1229A. And Congress was explicit that 1229A removal proceedings are, again, the sole and exclusive procedure for determining whether the alien may be removed from the United States. So that's... Is the act of being removed or removal the physical act of putting someone on a plane and leaving the country? What is that act called? Yes. So the... Well, so the... There is... So in a removal order, it contains the decision that the alien shall be removed from the United States. Right. There are circumstances in which there's difficulty in executing that removal order. I know you're trying to get to my question, but I need you to answer my question, which is what is the actual physical act called where agents physically put someone on an airplane and fly them to the country from which they came pursuant to the removal order? Isn't that removed? Removed? Your Honor, there's not a precise definition in the statute that governs that. Right. So... In our brief... So I guess... I guess let's assume it's removed, unless you tell me that there's something different is why I'm asking the question. If the determination of whether to be removed is something that's subject to bond, and in a withhold-only situation, someone is determining whether that person is going to be removed, in other words, put on the plane and go to that country or not, because there's some problem in that particular country or another country to which the DHS has designated that person to be removed, then isn't the withhold-only proceeding a proceeding that's determined whether that person is to be removed? No, Your Honor. Because the withholding-only proceedings, first, are just a country-specific form of protection from removal. So think about it like a separate order related to whether this individual is going to have the removal order executed to this particular country. Nothing that happens in those withholding-only proceedings affect the underlying determination that the alien shall be removed from the United States in that underlying removal order. There's no doubt about that. I don't think anyone disputes that, as I understand. But I guess my question is, if the physical act of putting someone on a plane or a boat and having them go back to the country from which they came is the removal or that person being removed, physically removed, and our legal question is whether the terminology in 1226A is the determination of whether someone is to be removed is an open question, then why is the withhold-only proceeding, which is seeking to determine whether someone is going to be put on that airplane or that boat, not within the scope of that language? Because it doesn't limit, first of all, it doesn't limit DHS's authority to immediately execute that removal order to a different country. And so the authority and the determination that that alien will be removed has already been made. The reinstatement provision in 1231A5 says specifically that when the order is reinstated, that's a determination that, quote, the alien shall be removed under the prior order at any time after the reentry. And so it's the determination in that underlying order and in the reinstatement of that order explicitly states that the determination has been made that the alien shall be removed. Now, if we're talking about whether there might be some practical difficulty with removing them to a particular country, well, that doesn't take an individual out of the provisions of Section 1231. In fact, that was precisely the situation that the Supreme Court was dealing with in the Zabidas case and in the Jama case. And in both of those cases, what they had was aliens who had final removal orders, but there was difficulty with either getting the country to which they were ordered removed to accept them and other difficulties in determining where they actually would, where and when that removal order would be executed. And the Supreme Court did not question at all that those aliens had final removal orders. And under Jama explicitly said that once an alien, it's been determined that an alien shall be removed. The determination about where and when that removal order shall be executed is a determination that takes place under Section 1231. These are determinations that take place as part of that provision. And similarly, with the Zabidas case, the Supreme Court said that 1231 was designed to give DHS some time and opportunity to determine where and how they were going to execute that removal order. These are determinations that sometimes involve choices of foreign affairs, interactions with foreign governments. But there is this removal period under Section 1231 specifically to deal with this. And so it would read that removal period out of the statute to require the agency to have made every sort of determination and overcome any potential bar to removing an individual to a particular country before they could fit under Section 1231. And I'll note also that there's various other indicators in the statutory structure that Congress intended that this once a removal order is reinstated to fit under Section 1231. They placed this reinstatement provision within 1231. They could have placed it in 1226. They did not. They placed it directly between the provisions in Section 1231 that govern detention. And they also placed within Section 1231 the provisions that govern removal to an alternate country and withholding of removal. So when Mr. Razivoff is pursuing withholding of removal, that's a decision that's governed by Section 1231b3, so within 1231. And Congress similarly placed the authority for DHS to execute that any final removal order to any country, to a wide range of countries, if for some reason a particular country is they can't execute it to a particular country, including if there's some barrier under 1231b3. So Congress put all these provisions in 1231 that said final removal order is executable to this wide range of countries. If it's not executable to any of these particular countries based on withholding claims or some other reason, DHS still has the authority as part of 1231 to try and remove the individual. And so by putting all of those provisions within 1231, Congress indicated that these decisions about withholding of removal and where an individual will be removed are intended to be part of the decision-making process that the agency makes under 1231. Counsel, how do we address our Jimenez-Morales decision, which as I understand it held, or at least discussed that, quote, where an alien pursues a reasonable fear proceeding following and I'm substituting the government, the government's initial reinstatement of a prior order of removal. The reinstated removal order does not become final until the reasonable fear proceeding is completed. What am I to do with that when the trigger for all of this is the administrative finality of the order, which would start the 90-day clock? Yes, Your Honor. And so that case and the line of cases that that case is built on dealt with a different issue. So those cases deal with when is it appropriate to seek review to the Court of Appeals of the separate decision in the withholding-only proceedings. So this line of cases begins with the Ortiz-Alfaro case by the Ninth Circuit. That's the first case that's cited in the Jimenez-Morales case in the Ninth Circuit. Counsel, I understand that the case is, the case has come up in the context of what's a final order of removal for a 1252. I get that. But I guess my question is, if we, in the course of doing that, have interpreted the reinstated removal order to not become final, meaning it's not a final order, then how then can we turn around here and say it's administratively final? Yes, Your Honor. So I think we're talking about two different orders here. So the order at issue in Jimenez-Morales is the order reinstating the previous removal order. So there's nothing in that case that says the underlying removal order, which remains insulated from review, is non-final. It's talking about the order on the reinstatement that leads the individual to seek withholding-only proceedings. Yes, but that's what we're talking about here, too. The subsection you quoted earlier, subsection 5, deals with the reinstatement of the order and the finality of that, right? I mean, what they're talking about is the reinstated removal order, the removal order that existed before that's now reinstated. That is what the court is saying, quote, does not become final until the reasonable fear proceeding is completed. Yes, Your Honor. But so there, again, we're talking about a separate order reinstating the earlier order. And so what that line of cases is based on is preserving, even though there's no dispute in those cases, and the district court acknowledges this, those cases don't open any avenue under any circumstances to review the underlying removal order. And so those cases are built on a constitutional avoidance approach because there's a concern that... I know the Ninth Circuit made that argument in its similar appeal, but we in Jimenez-Morales did not rest our decision, as I understand it, on constitutional avoidance. In fact, I don't believe the word constitutional avoidance is mentioned in Jimenez-Morales. Am I wrong or right about that? You're correct about that, but what it's based on is a citation to Ortiz Alfaro and Luna Garcia, which are based on a constitutional avoidance principle. And as the Supreme Court has said, in Clark and said more recently in the Jennings case, that when a court is applying a constitutional avoidance reading of a statute, it has to apply that constitutional avoidance reading as narrowly as necessary in order to preserve whatever the constitutional question is. There's no constitutional question raised by determining that the underlying removal order that matters for purposes of detention is final at the moment it is reinstated at the person. I'm just having trouble because our opinion didn't mention constitutional avoidance. And while we may be compelled to give a narrow holding, the holding, as I understand it, or at least a discussion of in the context of reaching its conclusion, the court stated that the reinstated removal order does not become final until the reasonable fear proceeding is completed. I just, I'm having trouble understanding how we can reconcile that with the determination that this order is administratively final for purposes of triggering the removal period in the 90-day period, and the 90-day detention period. Yes, Your Honor. And I think there's some language in that. May I answer the question? Yes. So I think there is some language in Jimenez-Morales that is imprecise, but that case did not raise the question here. It didn't deal with detention. It didn't deal with whether 1231 or 1226 applies. And so, yes, there's some language in that decision that, taken out of context, looks like it addressed a similar issue, but none of these issues related to detention or related to what provision governs were raised in that case. And the administrative finality at issue in that case was solely related to the separate determination in the withholding-only proceeding and preserving review over that. There was nothing addressed or raised in the briefs in that case related to the administrative finality of the underlying order. Thank you, counsel. We'll hear now from Mr. Prada, attorney for the petition. Good morning, Mr. Chief Judge, and may it please the court, Mark Prada for the- I'm sorry to interrupt your introduction, but I've been anxiously waiting to answer a couple of questions that I wanted to put to you. What is the status as of today or yesterday of your client's withholding-only proceeding, only man of the New York Immigration Court? Where are we on that? Well, it's still pending. So he had a hearing last year where DHS asked for the venue to be returned to Miami, which was granted over opposition. And then the judge in Miami at the Crone Detention Center, we moved to return the case to New York again, which was granted. So really there's been no progress at all. We're waiting for a hearing. His next hearing's in July, actually, so it'll be the first hearing to see what we actually do with that case or not, because the BIA suggests there should be a new trial on additional issues, but really all of that has been addressed in the first removal hearing. But that's not really before the court, but that is the status of the case at this moment. All right, let me ask you another question, if I can. There's a clear circuit split here, pretty good discussion on both sides, and it's an even circuit split, 2-2. And the Hott case is pending on cert before the Supreme Court. I believe they're waiting on the brief in opposition to be filed, but the Solicitor General has thought certs are already there. Is there any... What's your position on whether, before we rule, we ought to wait and see if the Supreme Court is going to grant cert in the Hott case? Well, there are two cases that I'm aware of. I believe it's Guzman, Chavez, and Arteaga-Martinez. They're both from what I checked last night, the response briefs are due on April 22nd. So if the court is to grant certs are already inside the case, I imagine that efficiency counsels abstain the proceedings, but at the same time, that's not guaranteed at this time that that will occur. And either way, should the court weigh in on the issue, I think it could be helpful to the Supreme Court in its understanding of the issues. You know, I'm flattered you would suggest that, but I kind of doubt that the Supreme Court is waiting with bated breath to see what our circuit decides when four other circuits have addressed it. Is there practical difficulties for your client in waiting on the Supreme Court's action on the cert? I thought it was one cert petition. You informed me there, too. What's your position on that? For my client, we would. It would be beneficial if the court were to withhold back on a ruling if the court is to grant cert at the Supreme Court, because, of course, the more time for him, it is better. And maybe his withholding proceeding could be completed during that time, because of course, the Supreme Court wouldn't even hear this until the following term, starting in October. So in a sense, yes, it is beneficial to my client if the court were inclined to do that. Let me follow up on that. This is Judge Marcus, Mr. Prada. I wanted to ask you about his bond status. As I understood it, the district court granted the writ and ordered him released last September. Do I have that right? Yes. And he's been free on bond since then and moved back to New York City. Correct? Yes. At any point, did the government seek a stay or anything like that on the order of release? No, when the immigration judge reinstated the bond, DHS has approximately 24 hours to appeal, which would grant an automatic stay. And that did not occur in this case. So he's out on bond and in New York is his present status awaiting a hearing in July. On the withhold issue, correct? Yes. Thank you. Thank you. And this case, it's about whether a decision is pending on whether a person is to be removed. And that determination is determined by whether the removal period has commenced and vice versa, because those two issues are really two sides of the same coin. And as the Supreme Court stated in Jennings, Section 1226 is the default rule. And in the government's opening brief at page five, they agree. They state that Section 1226 generally governs. And for Section 1226 to serve this purpose, it needs to work as a catch-off provision. Right. And that's why we believe Congress needs the words to be removed, because it's supposed to be broader than broad enough to capture everything that does not fall under another detention provision. So we believe the district court should be affirmed for three reasons. First, there can be no removal period without the present and final legal authority to execute a removal. Right. That's the actual authority argument that we've made in our briefs. And that is the way the Fourth Circuit has stated the test. And the second argument is that, well, it's based on contextualism, right? That the words to be removed were specifically used and Congress had other options. They could have used the term removable. That's the same term that the government has used throughout all its briefs and also before the court just now. Or it could have just simply used that there's the phrase that there is an order of removal. But Congress has not done that. Third, it's the Jimenez case. This court has already decided that when you invoke a successive proceeding beyond simply the reinstatement, the reinstatement order itself becomes non-final. Now, this is a concept that actually happens a lot in APA situations. Say an agency enters an order and somebody enters a file, the motion to reopen and that's being adjudicated, the original order would become non-final. That's not how it works. But counsel, there's a big there seems to me to be a big difference between finality for purposes of seeking judicial review. And I and I emphasize the term judicial review of agency action and what is administratively final for purposes of the agency. You agree that there would be a difference? So there is a difference? There could be a difference if Congress made that clear. Well, it isn't using the word final order of review, which is the word used in 1252 that was interpreted in Jimenez Morales and the other cases determining judicial finality for purposes of appeal or purposes of review and the use of the term in 1231 of administratively final. Isn't that a clear congressional indication that the word should be interpreted differently and apply one for judicial review and one for administrative finality? Not necessarily. I mean, the word final is going to have its definition, but when you modify it with administratively final, that requires something more. I don't think anyone could disagree with that. Anyone could reasonably disagree with that. But if that more means there has to be some potential review of that order in the administrative process, which I think is a fair reading of that, it seems to be here that A5 of 1350 of 1251 seems to indicate very clearly that the reinstated order is not subject to review or any sort of collateral effect administratively. Right? Yes. So then I think what that refers to is that the original integration judges order which is reinstated, that integration judges order is not subject to any review or collateral tax. But the actual act of reinstating, it requires predicate findings. The regulations show that the paperwork actually shows that. And then there's an execution of those findings where the reinstatement is entered. And in fact, if you don't even make a clear claim, you can file a petition for review in this court of the reinstatement. Right. We're way past all that. So the statute reads, and I'm talking about a 1231A5, that if the attorney general finds the alien has reentered illegally after having been removed or having been departed voluntarily and your client, we're already past that stage with regard to your client, under an order of removal, quote, the prior order of removal is reinstated from the original date and is not subject to being reopened or reviewed. How is that not administrative finality within the department? Not judicial review, not later judicial review, but that order, the reinstated order is no longer is administratively final for purposes of DHS. Viewing that section by itself, where it doesn't mention anything about a withholding only proceeding and assuming there was no such thing as a withholding only proceeding, that would be correct, right? And that's the general rule. And as in the Chavez case, our circuit says that is the general rule, but we're not dealing with the general situation here. We're dealing with the exception. And the data from the, from the amicus shows that I think it's only 3000 out of 120,000 cases where in this exception is invoked, right? So then the word administrative and the removal period prong has its purpose here because there's a further administrative process that begins. But that process doesn't, doesn't, doesn't have anything to do with the order of removal. I mean, remember what we're talking about here. The, we're talking about when an alien is ordered removed. So that's, this is 13, 1231 A1A. So when an alien is ordered removed, the attorney general shall remove within the 90 days and that section is referred to the removal period. The removal period begins at 90 days begins when the order of removal, not the process, not something else, but the order of removal becomes administratively final. And then A5 tells us that the prior order of removal, the same order is reinstated from its original date and is not subject to being opened and reviewed. Then how is that not administratively final? That order, not a withholding only order that shows that a particular country is not susceptible to having someone sent back to it. So the original IJ, if I may answer the question, Werner, the original IJ order is not valid once it's been executed, right? It only has power again, when there is a new reinstatement order. So even though the reinstatement order has the effect of reviving the prior executed order, it is in fact a new order. There are predicates involved and those can be challenged, right? So to say that the reinstatement order is really just part of the original IJ's order is incorrect. It is a new order. It just has the effect of bringing the previous order back into effect in a streamlined and faster manner. But there is a new process started. It is the reinstatement order. In the appendix, there is a notice of intent to revoke order where it was executed and it imposed these findings that allow for reinstatement. That is its own separate piece of paper and its own separate order, if that answers the question. Thank you. Next, we will hear from Mr. Matt Adams, attorney for the NAICS. May it please the court, I'm Matt Adams on behalf of AMICI. The plain language of both 1226 and 1231 are contrary to the government's interpretation. As this court has looked at, a decision on whether the petitioner is to be removed is precisely what is before the court, the immigration court, in withholding only proceedings. Now, the agency argues that it is theoretically possible, and in some rare cases, it does in fact happen, that persons granted withholding are removed to third countries. But that doesn't obviate the fact that the whole purpose of the withholding only proceedings is for the agency to make a decision of whether the person is to be removed. And that in itself demonstrates that there are still rights- You say- I'm sorry, counsel, I didn't mean to interrupt you so abruptly. But you say the whole purpose is to decide whether- for the agency to decide whether he's being removed. The agency's already decided that he should be removed. The question is whether he can be removed or should be removed to that particular country, is it not? That is true. But that's also true with every removal order. The agency- My point is that isn't what you said. And that's a large part of the government's argument on those withholding decisions. And that is that it's not whether, but when. It's not whether, but when. They've already decided whether, and now they're dealing with when. I disagree with that. Any removal order is a removal order to a designated country. And as the Fourth Circuit said in Guzman-Chavez, because the government's removal authority turns on the ultimate identification of an appropriate country for removal, it is not clear, while withholding only proceedings are pending, that petitioners are in fact to be removed from the United States. Well, it is clear they are to be removed if we can find somewhere to remove them. It's not as though we've got to decide, initially, we being the BIA, whether they should be removed if there's an available place. We've already decided that. Now we're looking for somewhere to remove them to. That is correct. But the if is a big if there. And in fact, as we've demonstrated that the government's own records show, these individuals are, for most intents and purposes, 98% of the time permitted to remain and live in the United States because the government is not able to remove them. And in fact, the regulations afford them the right to employment authorization precisely because a grant of withholding is, for the vast majority, the grant to remain in the United States, a determination that they will not be removed. And I would like to turn to one of the questions that was posed earlier with whether these are, in fact, two very different types of order. Administratively, a final order under 1231 versus a final order for judicial review under 1252. And I think one point that often gets overlooked in looking at the removal period is that the removal period does not commence until the later of two things. And that is an administratively final order of removal or until after the petition for review has been filed and decided if the individual obtains a stay of removal during that petition for review. That makes clear that the removal period cannot even commence until the individual has an opportunity to file a petition for review. And so, in a sense... So, counsel, I thought in litigation, everybody was clear throughout, even through the district court proceeding, that subsection little two and little three had no application here, that all that we're talking about here is the application of the removal period under little one being whether the order of removal was administratively final. Isn't that right? Respectfully, I disagree. I think little two is very important and instructive to this case, in fact. So, I just want to be clear. You're saying that the parties, even though they both said that those provisions had no application here, do you have application here that you as amici can come in and assert that on behalf of the petitioner? What I am attempting to instruct or to explain is that subsection two further reinforces that the removal period has not commenced. And that's because Mr. Radzibov is currently before the immigration judge. And if he were to lose his application for withholding and then, again, lose on appeal to the BIA, he has the right, as this court has already held in Jimenez, to then file a petition for review. And so, only at that point, then, would subsection two come into play. But, again- But that hasn't happened yet. In fact, there's been no judicial determination or no even initial determination by the IBA on the withhold only application. So, right now, the latest of anything to happen is subsection one, right? That demonstrates that subsection one has not even happened yet. Because it's the latest of either one or two. Counsel, how could that be the case where if the language means anything, if something is administratively final, then that has to be different than what can be judicially reviewed. And more importantly, what has to be judicially reviewed there is the removal order, not the withhold only order, not the order determining that there isn't a country to send them to, but the removal order, the one that subsection A5 of the same exact statute says is not subject to review, right? The removal- No, I disagree. The removal period is defined by statute. It is not just for the prior underlying removal order. It's for this new reinstatement order that has not yet been executed. And the removal period for this new reinstatement order commences either on the later of these events, the final administrative order, or if the individual files a petition for review and obtains a stay, the later of the court of appeals resolving that petition for review. It would be contrary to the statute, it would be nonsensical to argue that the removal period has commenced before the petition for review can even be filed. So in this case, not only is there not an administratively final- Isn't the difference because this statute also applies to those, unlike your client, who aren't illegal reentries, but instead are those who are applying for withhold the first time around and don't have reinstated orders? Isn't that exactly why subsections two and three are there? No, I disagree because as the Supreme Court made clear in Fernandez-Vargas, a reinstatement order itself can be challenged on a petition for review. I understand, but counsel, doesn't the statute apply to initial withhold petitions, not those like your client who are illegal reentries? It applies to all, so I wouldn't agree that it does not apply. As this court made clear in Jimenez-Morales, our client on a petition for review can seek judicial review of the denial of a withholding determination on a petition for review. Isn't that separate from administrative final? What is administratively final, which really is a lot of the crux of what everyone is arguing about, all the circuits and even the district court and the magistrate judge here, and that that is triggered by the finality of the reinstated removal order? I certainly agree that the crux comes down to when it is a final determination, but what I don't agree is that you have a final agency order at the moment the reinstatement order is signed off of when the individual is thereafter referred to the immigration court for removal proceedings, because as the regulations themselves define at 241.8E, this is an exception to the normally summary process in which the individual is then immediately subject to removal, but 241.8E defines it as an exception, and I think it's instructive to look at, in fact, another exception, 241.8D, where an individual who would under another statute, so, again, making clear that, yes, in general, a reinstatement order leads to a summary expulsion with a final order. There are exceptions, and the regulations define withholding as one of these exceptions where an individual is then transferred to the immigration court, which, again, comports with the definition of what a final action is under the Supreme Court. Is this the culmination? Are there rights and obligations that will be determined? And it's clear that there are rights and obligations that have yet to be determined, so you do not have a final agency action. And I believe that's my time, so thank you for listening to our arguments. Thank you, counsel. We'll hear now Mr. Ward. You've got four minutes, and Ms. Teasdale, before you start your time, I want to ask him a question. I want to take up his reply time on the merits, and that is about the circuit split, Mr. Ward. I want to correct a little bit Mr. Prada. He said there were two CERT cases pending, and that is correct, but the one, and you probably know this since it's your department, the one out of the Third that's related to the question before us, but is not the same question before us. Notwithstanding that, there is a CERT petition pending filed by the Solicitor General and Guzman-Chavez v. Haas. What is the department's position on whether we should hold the decision in this case in abeyance to see if the Supreme Court is going to grant CERT in the Fourth Circuit case, which involves the identical issue, and decide it? Yes, Your Honor. Well, I think that it would be premature to make a decision to hold this case in abeyance before we know when the CERT petition is going to be fully briefed, and if the Supreme Court would actually grant it. We know the brief in opposition is due the third week in April, but I don't understand that really. It'll be completely briefed and ready for an order conference if they put it on an order conference before the court adjourns for the summer, and there's no way that they're going to hear and decide it before that. If they grant CERT, it'll be very late in this term or early in the next term. But I'm asking you, given that scenario, should we hold this case? I mean, suppose we rule in your favor. I tend to doubt if it's clear that we would then say, okay, you can revoke his bond, even though he will, I am certain, file for CERT and add his CERT petition to the stack up there. So what is the department's position on whether we ought to hold a decision in abeyance in this case until there is a ruling on the CERT petition before the Supreme Court? Yes, Your Honor, because I believe it'll take some time, and certainly if the Supreme Court grants CERT, the case won't be argued and decided by the Supreme Court anytime in the near future, and because of the risk of this issue in this particular case mooting out, over that time if his withholding-only proceedings conclude and it's no longer an issue of an individual with ongoing withholding-only proceedings, I think that holding this case in abeyance to wait for the Supreme Court would risk losing the opportunity to make a decision at all. I guess it's just the difference between a judge and a lawyer, or at least this judge and this lawyer, if they don't rush ahead and decide it, notwithstanding the distinct possibility the Supreme Court may decide to decide it, that we'll lose an opportunity to decide it. I view it in terms of if we rush ahead and decide it, even though the Supreme Court may ultimately lose an opportunity not to decide it, because, I mean, let's be realistic. Supreme Court grants CERT, it does not matter what this court has held. The Supreme Court, as the first word in the title indicates, will have the word, and everybody else's word won't matter on the thing, but we'll take it as the Department would prefer that we go ahead and decide the issue. Yes, Your Honor. Let me ask you a slightly different question, Mr. Ward. This is Judge Marcus. Two are fact-based questions, one is a legal one. First, how long was this petitioner held before the District Court ordered him released on the habeas in September of 19? Let me see if I can look that up. I don't have that. I thought it was 589 days, a little less than 18 months. Am I about right in that regard? That sounds about right, Your Honor. Second question, did you, after the District Court entered the order on the writ for habeas and cut the petitioner loose, did you seek a stay, either from the District Court or this court? A stay of the District Court's order? Yes. No, Your Honor. The release. No, Your Honor. Third and last question that I have, if we were to agree with you that Section 1231 applies, it would follow that we would vacate the District's order on a bond, at least to the extent it was grounded on Section 1226. Would it be appropriate for us to remand to the District Court to address the due process issue concerning the length of detention? Yes, Your Honor. If this court were to find that 1231 governs in this situation and that that there needed to be a ruling on the due process issue, it would have to be remanded to the District Court because the Supreme Court has set out the process for making that sort of, for the record that needs to be made for a due process claim under 1231. It requires the petitioner to put forward evidence that his removal is not likely in the reasonably foreseeable future and also requires the government to have an opportunity to rebut that evidence. And so, that record, because this was decided on statutory grounds before the District Court, wasn't developed. And obviously, the petitioner is not currently detained. And so, if the court was inclined to make any sort of ruling on the due process claim, that would have to be remanded to the District Court. Right. So, what would we do with the bond in the meantime? Ms. Teasley, if you haven't already, please start counsel's time. I'm sorry, Judge Marcus, interrupted you. What would you have us do with the bond, though? If we agreed that 1231 applied, we vacated the District Court's order of bond under 1226 ground. We remanded to the District Detained for 589 days. Would it be your view that we should order him detained in the meantime? Well, my understanding is that the District Court did not... Can I ask that question? Yes, Your Honor. So, my understanding is that the District Court did not grant him bond, but ordered that he was entitled to a bond from an immigration judge. And so, it wouldn't be overturning... It would be overturning the District Court's order to the extent it found that the immigration judge had authority to hold a bond hearing for him. And so, it would, I believe, by operation of turning over that authority, wipe out the immigration judge's bond ruling, or DHS would alternatively have to go back to that immigration judge and ask to reopen and reconsider that bond amount based on the change in law from this court. This is Robert Luck. Isn't that what the Supreme Court did, what Judge Marcus is asking about in Jennings? Remanded for further consideration of the due process claims? Yes. In reverse, they remanded for further issues, as Judge Marcus is referring to, and it allowed the bond to stay in while that was going on, right? Yes, Your Honor. I believe that's correct. Wouldn't that be the appropriate remedy here, assuming we reversed and remanded for the due process claim? To remand for further proceedings, but not disturb the bond holding? That seems appropriate, Your Honor. Or not disturb that there is a bond. Reverse on the legal issue, but not disturb the actual bond. Well, I don't know that the court would need to weigh in on the bond one way or the other, because the bond is a separate... The reason I raised the question was I thought the position of the United States was that not only should we vacate, really reverse the district court on its 1226 ruling, find that 1231 applies, but also vacate the district court's order of bond and order him detained. While a hearing might go forward on the dividas, which he would be able to raise on his own initiative in the appropriate forum. Did I misunderstand your position? So, again, my understanding is that the district court ordered that the immigration judge would have authority to consider bond, and that the immigration judge did and granted him a bond. And so we're asking to vacate the order from the district court that says the immigration judge has that authority. And so that would, by operation of law, wipe that out. But that wouldn't preclude him then, if the court remands, to challenge his detention under Section 1231 on due process grounds on the remand. If he is not re-detained, then there's no basis for a habeas, challenging the length of his detention. So, effectively, if the court was to order that he's detained under 1231, but not vacate the order that leads to the bond hearing in his release, so that he remained released, then that would simply moot out that aspect of the case, I believe. Time has expired. Thank you, Your Honor. If there's no further questions, we'd ask that the court vacate the decision of the district court and find that Fishner is governed by the provisions of Section 1231.